[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 524.]

THE STATE OF OHIO, APPELLANT, *v*. COLLINS, APPELLEE.

[Cite as *State v. Collins*, 2000-Ohio-231.]

*Criminal law—Nonsupport of dependents—R.C. 2919.21, construed and applied.*

(No. 99-1146—Submitted April 25, 2000—Decided September 6, 2000.)

APPEAL from the Court of Appeals for Lucas County, No. L-98-1095.

———————————

{¶ 1} In September 1990, the Lucas County Court of Common Pleas, Domestic Relations Division, granted a divorce to Kaye Collins from Donald Collins (hereinafter "Collins"). The court found that two children were born to the Collinses during their marriage, and that Collins was then earning an annual salary of $150,000 as a professional basketball player. The court ordered the following: (1) custody of the children to Kaye Collins; (2) Collins to pay child support "through the Lucas County Child Support Enforcement Agency, the sum of $253.00 per week, per child, plus poundage, for a total of $516.12, effective August 24, 1990"; and (3) a lump-sum judgment award against Collins for child support arrears through August 20, 1990, totaling approximately $14,500 payable at the rate of $100 per week, plus poundage, through the Lucas County Child Support Enforcement Agency ("child support agency").

{¶ 2} In November 1990, the domestic relations court found that Collins had failed to comply with the child support obligations imposed by the divorce decree, and was in arrears in the amount of $6,898, in addition to the prior lump-sum judgment. It issued a bench warrant for his arrest pursuant to R.C. 2705.031, which provides procedures for imposition of sanctions for contempt of court based on failure to pay court-ordered child support.

{¶ 3} In 1994, the domestic relations court entered another lump-sum judgment against Collins in the amount of $136,698.89, representing child support and spousal support arrearages.

{¶ 4} On November 20, 1997, the grand jury sitting in Lucas County, Ohio, filed an indictment setting forth two counts against Collins. In the first count, Collins was charged with a violation of R.C. 2919.21(A)(2), as in effect until June 30, 1996, on the allegation that from September 13, 1990 until June 30, 1996, Collins "recklessly failed to provide adequate support" to his children. In the second count, Collins was charged with a violation of R.C. 2919.21(B) and (G)(1), in that he did "recklessly abandon or fail to provide support as established by a court order" to another person he was legally obligated to support from the period July 1, 1996 to November 19, 1997.

{¶ 5} Collins entered not guilty pleas to both counts, and the case proceeded to trial.

{¶ 6} A records keeper from the child support agency testified that it had received approximately $22,000 in child support payments from Collins in 1990, but had received no payments by or on behalf of Collins from 1991 through 1997. During the latter years, Collins was employed as a professional basketball player in Switzerland and France.

{¶ 7} Collins's ex-wife appeared pursuant to subpoena and testified that she had never received any money directly from Collins as child support. She also testified that appellant sent gifts, including cash and clothing, to the two girls for holiday and birthday presents, and that he paid for the girls to take trips, including one to Disney World, and to visit him in Europe. She further testified that the girls lived with Collins in France for a one-year period in the early 1990s. At the time of trial, Kaye Collins was living in subsidized housing and receiving welfare benefits.

{¶ 8} A deputy clerk from the Lucas County Court of Common Pleas, Domestic Relations Division, admitted that appellee signed a valid wage assignment

order on March 20, 1990, for income benefits withholding and that the order was sent to his employer in Europe. She also admitted that it was possible that Collins's employer withheld the child support from appellant's wages but never sent the payments to the child support agency.

{¶ 9} The jury returned guilty verdicts on both counts. The trial court accepted the verdicts, found Collins guilty, and sentenced him.

{¶ 10} On appeal, Collins asserted prosecutorial misconduct during closing argument. The court of appeals agreed, accepting his contention that the prosecutor had made comments designed to shift the burden of proof to Collins. The court of appeals observed that no curative instructions were given, even though Collins repeatedly objected to the remarks, and concluded that it was not clear beyond a reasonable doubt that the jury would have found Collins guilty absent the prosecutor's comments. The court of appeals therefore reversed Collins's convictions and remanded the cause.

{¶ 11} The cause is before us upon the allowance of a discretionary appeal.

_____

*Julia R. Bates,* Lucas County Prosecuting Attorney, and *Eric A. Baum,* Assistant Prosecuting Attorney, for appellant.

*Boyk, McCulley & Crossmock* and *Charles E. Boyk*, for appellee.

*Timothy A. Oliver,* Warren County Prosecuting Attorney, and *Derek B. Faulkner*, Assistant Prosecuting Attorney, urging reversal for *amicus curiae*, Ohio Prosecuting Attorneys' Association.

*Betty D. Montgomery*, Attorney General, *David M. Gormley*, Associate Solicitor, and *Alejandro Almaguer*, Assistant Solicitor, urging reversal for *amicus curiae*, Attorney General of Ohio.

_____

**MOYER, C.J.**

{¶ 12} In his brief in the court of appeals, Collins argued that the following statements made by the prosecutor during closing argument constituted an attempt to shift the burden of proof to him, thereby depriving him of a fair trial:

"1. 'The defense offered no testimony that Donald Collins paid directly to the mother.'

"2. 'No canceled checks or copies of money orders were ever presented showing payments to the mother.'

"3. 'In fact, the defense never asserted that they paid child support directly to the mother.'

"4. 'There's no evidence to the contrary, that he did not have income from which he could pay child support.'

"5. 'There was simply no evidence presented whatsoever that Donald Collins paid child support.'

"6. 'Again, no testimony was offered that Donald Collins had money withheld from his salary.'

"7. 'There were no pay stubs brought in that said here are the deductions for child support, the money was taken from me.'

"8. 'Surely if such things were in existence, we would have seen them.'

"9. 'There was no evidence offered that the Defendant is totally or partially disabled, no medical records, no hospital records, no diagnosis from a doctor.'

"10. 'There was no evidence presented that the Defendant is unemployed even or unemployable.'

"11. 'The State does not have to prove the ability—the Defendant's ability to pay. The Defendant has to prove that he was unable to pay.'

"12. 'In fact, we never even heard an assertion in this case that that did happen, that child support was withheld from Donald Collins' salary. No evidence whatsoever was presented to that effect.' "

**{¶ 13}** Implicit in the state's argument is the contention that the above-quoted statements by the prosecutor did not constitute error requiring reversal of Collins's conviction. We agree.

**{¶ 14}** It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916; *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911; *State v. Petro* (1948), 148 Ohio St. 473, 498, 36 O.O. 152, 162, 76 N.E.2d 355, 367; and *State v. Champion* (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141, 143-144. Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent. A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify. *State v. Thompson* (1987), 33 Ohio St.3d 1, 4, 514 N.E.2d 407, 411, citing *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, 32 O.O.2d 437. Nevertheless, the prosecutor is not precluded from challenging the weight of the evidence offered in support of an exculpatory theory presented by the defense. See *State v. Watson* (1991), 61 Ohio St.3d 1, 9, 572 N.E.2d 97, 105-106. Neither must the state, in order to satisfy its own burden of proof, disprove every speculative set of possibly exculpatory circumstances a defendant can suggest, nor refrain from arguing the defendant's failure to provide evidence to support proffered theories of excuse or innocence.

**{¶ 15}** At trial Collins attempted to convince the jury that he should be found not guilty of the crimes charged because he had signed a wage assignment form in 1990, implying that the law imposed no further responsibility upon him to assure compliance with the child support order issued by the domestic relations court. He urged the jury to speculate that wages indeed were withheld by his European employers, but never transferred to the child support agency, or his children, in the United States. He further elicited testimony from his ex-wife and daughter that he had

provided occasional gifts directly to his children, and had provided for their support for approximately a one-year period when they lived with him in Europe. He implied that he was financially unable to comply with his court-ordered child support obligation based, in part, on medical problems, including back surgeries. The prosecutor's argument constituted fair comment on the strength, or lack of strength, of the evidence offered by Collins to support these theories, and did not constitute a negative comment on his decision not to testify.

{¶ 16} Even assuming, *arguendo*, that the prosecutor's comments were inappropriate, the record demonstrates that the trial overall nevertheless was fair. Both the trial court and defense counsel repeatedly reminded the jury that the state bore the burden of proving that appellee violated the statutory provisions he was charged with violating. Moreover, the trial court specifically instructed the jury that appellee had "a constitutional right not to testify." The court further charged the jury that the "fact that [the defendant] did not testify must not be considered for any purpose."

{¶ 17} The parties have argued this case as presenting the legal issue whether the crime set forth in R.C. 2919.21(B), *i.e.*, failure to pay in accordance with a court order of child support, requires the state to prove a specific *mens rea*. The state asserts, as its sole proposition of law, that "R.C. 2919.21(B) is a strict-liability offense," thereby challenging the conclusion of the court of appeals that the state was required to prove recklessness on the part of Collins as an element of the crime charged of him in the second count of the indictment.[1]

{¶ 18} The second count filed against appellee by the grand jury charged him with a violation of the current version of R.C. 2919.21(B), which reads:

---

1. The state has chosen to contest only that portion of the court of appeals' decision dealing with the second count of the indictment, which charged violation of R.C. 2919.21(B), effective July 1, 1996. The first count of the indictment charged Collins with a violation of R.C. 2919.21 as in effect prior to July 1, 1996.

"No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support."

{¶ 19} The court of appeals found that this statute does not specify the degree of culpability the state must prove beyond a reasonable doubt, and therefore applied R.C. 2901.21(B), which provides:

"When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

{¶ 20} The court of appeals determined that the legislature did not specify a mental element for culpability in R.C. 2919.21, or plainly indicate a purpose to impose strict liability. It concluded that the state therefore had the burden to prove that appellee recklessly failed to provide adequate support to his minor children as mandated by a court order, in order to demonstrate a violation of R.C. 2919.21(B). The court of appeals held contrary to the trial court on this issue, as the trial court expressly struck the word "reckless" from the second count of the indictment, and declined to instruct the jury that recklessness was an element of R.C. 2919.21(B).

{¶ 21} However, the focus of the parties in the court of appeals was on Collins's assertion of prosecutorial misconduct. His argument focused solely on the ground that the prosecutor's statements included what he asserted to be unfair comments implying that the burden of proving a criminal violation had shifted from the state to the defendant. As discussed earlier, the trial court appropriately overruled those objections. The state did not argue that the prosecutor's statements were legitimate because R.C. 2919.21(B) was a strict-liability offense.

**{¶ 22}** We acknowledge the convincing public policy arguments presented by the state and *amicus* Ohio Prosecuting Attorneys' Association in support of the proposition that failure to follow a court-ordered child support order should be a strict liability offense. However, the General Assembly itself has established the test for determining strict criminal liability in R.C. 2901.21(B). That statute provides that where a statute defining a criminal offense fails to expressly specify a mental culpability element, *e.g.*, negligence, recklessness, or intentional conduct, proof of a violation of the criminal provision requires a showing of recklessness, absent a plain indication in the statute of a legislative purpose to impose strict criminal liability. R.C. 2901.21(B). It is not enough that the General Assembly in fact intended imposition of liability without proof of mental culpability. Rather the General Assembly must plainly indicate that intention in the language of the statute. There are no words in R.C. 2919.21(B) that do so.

**{¶ 23}** Were we to accept the state's argument that public policy considerations weigh in favor of strict liability, thereby justifying us in construing R.C. 2919.21(B) as imposing criminal liability without a demonstration of any *mens rea*, we would be writing language into the provision which simply is not there—language which the General Assembly could easily have included, but did not. Cf. *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363 (violation of R.C. 2907.323[A][3], providing that "[n]o person shall," *e.g.*, possess or view, any material or performance involving a minor who is in a state of nudity, requires showing of recklessness); *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975 (violation of R.C. 2919.22[A], which provides that "no person, who is the parent * * * of a child under eighteen years of age * * *, shall" endanger that child, requires showing of recklessness). Clearly, society has just as compelling a need to protect children from sexual exploitation and child endangerment as it does to ensure payment of court-ordered child support obligations.

{¶ 24} Moreover, we find more than sufficient evidence in the record in the case at bar to support a jury finding of recklessness. The state most commonly proves criminal intent through circumstantial evidence. Where, after notice and opportunity to be heard, a court order is issued mandating a person to submit child support payments to a specific agency of government, and that agency shows no record of any payments having been received from that person over a period of many years, a circumstantial inference arises that the person was aware of the obligation to pay and yet did not do so. Payment in accordance with such an obligation is an either-or proposition—the obligor either takes intentional actions to pay, or does not. Where no payments reach the agency over a period of many years, it may be inferred that the obligor took no action to ensure payment, and, in fact, intended not to pay. Accordingly, where no evidence is presented to counter that inference, such as evidence of mistake or misdirected payments, a jury has evidence before it sufficient to establish a culpable mental state of at least recklessness, beyond a reasonable doubt. The fact that a defendant may then realistically find himself with a burden of producing evidence to counter that inference does not mean that the ultimate burden of proof has shifted to the defendant.

{¶ 25} Such an inference of recklessness is reinforced in the case at bar by the fact that, subsequent to the 1990 wage assignment executed by Collins, a second lump-sum judgment was entered against Collins in 1994 totaling nearly $137,000 in child support and spousal support arrearages. Clearly at that time Collins was on notice that the child support agency was not receiving child support payments from his employer pursuant to his signing a wage assignment authorization form in 1990. Yet the agency received no payments whatsoever from 1991 through the 1997 date specified in the indictment. The evidence presented by the state is more than sufficient to support a finding of at least a reckless failure to comply with the 1990 and 1994 court orders.

**{¶ 26}** The trial was free of reversible error. The judgment of the court of appeals is reversed, and the cause is remanded for reinstatement of Collins's conviction on the second count of the indictment.

*Judgment reversed*

*and cause remanded.*

DOUGLAS, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

WAITE and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

CHERYL L. WAITE, J., of the Seventh Appellate District, sitting for RESNICK, J.

_____

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

**{¶ 27}** I concur with the majority as to the lack of prosecutorial misconduct and that the evidence was more than sufficient to prove recklessness. However, I respectfully dissent with its conclusion that recklessness is the necessary *mens rea* to establish a violation of R.C. 2919.21(B).

**{¶ 28}** The majority declines to impose strict liability in R.C. 2919.21(B) on the basis that "[t]here are no words in R.C. 2919.21(B) that do so." The majority relies upon R.C. 2901.21(B), which provides that where a statute does not specify the degree of culpability but "plainly indicates a purpose to impose strict criminal liability," then culpability is not required to find a person guilty of the offense. I believe the majority's analysis should also have considered the legislative intent and public policy behind the statute to determine whether strict liability for the conduct described in R.C. 2919.21(B) was intended. See *State v. Schlosser* (1997), 79 Ohio St.3d 329, 681 N.E.2d 911.

**{¶ 29}** On numerous occasions, this court has determined that strict liability applies in a statute that defines a criminal offense despite the statute's silence on the applicable mental state. See *Schlosser* (strict liability imposed under the RICO statute, R.C. 2923.32[A][1], despite the lack of specific *mens rea* language);

*Greeley v. Miami Valley Maintenance Contractors, Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981 (strict liability imposed for discharging an employee on the basis of an order to withhold child support from employee's paycheck in violation of R.C. 3113.213[D]); and *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428 (strict liability imposed for gambling under R.C. 2915.03[A][1] but not R.C. 2915.03[A][2] because of language differentiation).

{¶ 30} Likewise, appellate courts have imposed strict liability, despite the absence of a specific statement of *mens rea*. See *State v. Larbi* (June 21, 1999), Stark App. No. 1998CA00192, unreported, 1999 WL 437007 (strict liability standard imposed for violation of R.C. 4301.69, selling alcohol to a minor); *State v. Hull* (1999), 133 Ohio App.3d 401, 728 N.E.2d 414 (strict liability standard imposed for violation of R.C. 3599.12, illegally voting in Ohio elections); *State v. Donnelly* (Feb. 2, 1999), Ashland App. No. 98COA01272, unreported, 1999 WL 172772 (strict liability standard imposed for violation of R.C. 959.13[A][1], which states that "no person shall" cruelly treat an animal); *Cleveland v. Criss* (Dec. 10, 1998), Cuyahoga App. No. 72862, unreported, 1998 WL 855630 (strict liability standard imposed for violation of city ordinance, which states that no person with a temporary driving permit shall drive without a licensed driver); *State v. Workman* (1998), 126 Ohio App.3d 422, 710 N.E.2d 744 (strict liability standard imposed for violation of R.C. 3599.12, which states that "no person shall" impersonate another in order to vote); *State v. Shaffer* (1996), 114 Ohio App.3d 97, 682 N.E.2d 1040 (strict liability standard imposed for violation of R.C. 1721.21[B], which states that "no person shall" operate or continue to operate a cemetery without establishing or maintaining an endowment care fund); *State v. Harr* (1992), 81 Ohio App.3d 244, 610 N.E.2d 1049 (strict liability standard imposed for violation of R.C. 4507.02[B][1], which states that "no person shall" drive with a suspended license); *State v. Cheraso* (1988), 43 Ohio App.3d 221, 540 N.E.2d 326 (strict liability standard imposed for violation of R.C. 4301.69, which states that "no person shall"

sell beer to a minor); *State v. Grimsley* (1982), 3 Ohio App.3d 265, 3 OBR 308, 444 N.E.2d 1071 (strict liability for violation of R.C. 4511.19, driving under the influence).

{¶ 31} The majority cites *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, and *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, in support of its conclusion. However, the statutes at issue in those cases do not evidence an intent to impose strict liability. Violation of those statutes could arise in a perfectly innocent situation, *i.e.*, viewing a photograph of a child in a bathtub, or failing to prevent a child from running into the street. Where an innocent or negligent act *could* subject a parent to criminal liability, recklessness should be required in order to establish a violation of the statute. This case, however, involves a much different scenario, the violation of a *court order.*

{¶ 32} In *Schlosser*, this court looked to the statutory language, the legislative intent, and public policy to determine whether the statute was intended to impose strict liability for the conduct described. *Schlosser*, 79 Ohio St.3d at 331-332, 681 N.E.2d at 913. I believe that the General Assembly clearly intended there to be strict liability for a violation of the conduct proscribed in R.C. 2919.21(B). R.C. 2919.21(A), in existence for decades, imposes criminal liability for failing to provide "adequate" support to one's obligees. In July 1996, the General Assembly passed a law that added a new section to address the failure to provide support as already established by court order. 146 Ohio Laws, Part VI, 10862. R.C. 2919.21(B) states: "*No person shall* abandon, or *fail to provide support as established* by a court order to, another person whom*, by court order or decree*, the person is legally obligated to support." (Emphasis added.)

{¶ 33} In addition, newly enacted R.C. 2919.21(D) creates an affirmative defense when the failure to provide support established by court order under section (B) is due to lack of ability or means. These statutory changes remove the state's burden to prove the inadequacy of the support when a court order has already

established the legal obligation to pay. The state need only establish the violation of a court order. It is apparent that R.C. 2919.21(B) expands the scope of criminal liability beyond what is "adequate" support, and that the new affirmative defense recognizes situations where the obligor lacks that means or ability to pay. These changes plainly indicate a purpose to impose strict liability as the culpable mental state for a violation of R.C. 2919.21(B).

{¶ 34} In this case, the divorce resolved issues of responsibility, income, and needs of the child, and the final decree established the amount of the father's child support obligation. When he failed to follow that court order and arrearages had grown within four years to more than $136,000, the state was called upon to obtain yet another court order to resolve support issues and arrearages. At that time, the father was both negligent *and* reckless in his failure to pay support, necessitating the state to take additional action based on the existing court order that already placed upon the father an *affirmative duty* to pay support.

{¶ 35} The General Assembly intentionally differentiated between the liability imposed under R.C. 2919.21(A) and that for *disobeying a court order* under R.C. 2919.21(B). The state had already obtained a court order against the father for arrearages and proven that he was negligent and reckless and perhaps willful in failing to pay child support. The state should not have to prove its case again.

{¶ 36} The plain language of the statute also implies the application of strict liability. The use of the operative words "no person shall" clearly indicates the General Assembly's intent to impose strict liability. *Schlosser.* There is no doubt that the defendant understood his duties and obligations under the court order. The court order, part of the foundation of any orderly society, demands compliance.

{¶ 37} An offense designed to protect the public health, safety, or welfare need not contain intent as a necessary element. *Morissette v. United States* (1952), 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288. "While such offenses do not threaten

the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.*, 342 U.S. at 256, 72 S.Ct. at 246, 96 L.Ed. at 296-297.

{¶ 38} Clearly, this statute was designed to protect our most vulnerable population, our children, and we can reasonably expect a parent to assume his or her responsibility to support that child.

{¶ 39} Finally, public policy supports such an interpretation. Strict enforcement of child support obligations "clearly serves the public purpose of advancing the welfare of children by enforcing a child's right to be supported by his parents, fostering parental responsibility and parental involvement with the child, and preventing the child and custodial parent from having to turn to welfare." *In re Lappe* (1997), 176 Ill.2d 414, 431, 223 Ill.Dec. 647, 656, 680 N.E.2d 380, 389.

{¶ 40} A failure to support one's child is also morally wrong and ultimately imposes the burden of support upon the public. The custodial parent carries the entire financial responsibility of support and the state is faced with prosecuting the failure to adhere to a court order *already* in place. The state need not have to prove one's state of mind for failing to obey a court order. As the Illinois Supreme Court explained:

"The focus of this legislation is on *effective* enforcement. The provisions simply create a mechanism whereby custodial parents of dependent children can,

14

*with minimal time and expense*, obtain assistance with the paperwork involved in child support enforcement, with locating the person obligated to pay support and with taking the necessary steps, including judicial action, to ensure that the proper amount of money is collected." (Emphasis added in part.) *In re Lappe*, 176 Ill.2d at 432, 223 Ill.Dec. at 656, 680 N.E.2d at 389.

{¶ 41} The state proved this defendant's recklessness. However, the state prosecutes hundreds of persons under this section. The next case may not be so easy. Recklessness is a more difficult standard to prove. In the event of nonpayment of child support, must a parent gather evidence of "recklessness" before the state will assist in enforcement? If a defendant is negligent in failing to abide by the order, but not reckless, is there criminal liability? Or do we merely warn the defendant to try harder and to pay attention to court orders?

{¶ 42} The answer is simple. If a court order requires a parent to pay child support, that parent must obey it unless the parent proves that he or she is financially *unable* to do so. If the parent does not pay the court-ordered child support, the parent is guilty of violating R.C. 2919.21(B). The mere fact of nonpayment should be sufficient to establish culpability. Therefore, I respectfully dissent from the majority's conclusion on *mens rea.*

WAITE, J., concurs in the foregoing opinion.

_____