OPINION
{¶ 1} Defendant-appellant Edward Frazier Jr. appeals the decision of the Youngstown Municipal Court which found him guilty of operating a vehicle under suspension and of operating a vehicle with illegal license plates. Appellant contends that the state failed to prove the requisite mental state for illegal plates and that he proved his affirmative defense of inoperability by a preponderance of the evidence with regards to both offenses. For the following reasons, appellant's conviction for illegal plates is reversed as the requisite mental state was not established, and appellant's conviction for operating under suspension is affirmed as the court's decision that the car was operable was not against the manifest weight of the evidence.
 STATEMENT OF FACTS {¶ 2} On August 4, 2000 at 1:15 a.m., Youngstown police officers stopped behind a vehicle parked at an angle on Thornton Avenue. Appellant was in the driver's seat of the vehicle with the keys in the ignition. The officers issued a parking ticket for parking more than twelve inches from the curb. In doing so, the officers noticed that the license plates did not match the car; neither the car nor the license plates were owned by appellant. The officers also discovered that appellant's driving privileges had been suspended. Thus, appellant was charged with operating a vehicle under suspension in violation of R.C. 4507.02, a first degree misdemeanor, and operating a vehicle with illegal plates in violation of Yo. City Ord. 335.11(A), a fourth degree misdemeanor.
 {¶ 3} The case was tried to the court on February 1, 2001. Officer Lee testified that the car was parked in front of a suspected drug house where multiple drug arrests had been made in the past. (Tr. 7). He noted that the car was parked at an angle that implied someone was being dropped off or picked up. (Tr. 23). The officer stated that appellant was in the driver's seat, and the keys were in the ignition. (Tr. 10). The officer also testified that the plates did not belong to the vehicle and appellant's driving privileges had been indefinitely suspended since May 1999. (Tr. 11-13).
 {¶ 4} Appellant took the stand in his own defense. He testified that the woman who owned the car often bought and sold cars which he repaired for her since he was a trained mechanic. (Tr. 31). He stated that the woman called him in the day or evening of August 3, 2000 and asked him to look at her car which she parked on Thornton near her house. (Tr. 30, 31, 33). He said he checked the car earlier that day and diagnosed it with having a dragging starter. (Tr. 30, 32). He defined this as meaning the starter gets hot when the car is driven so that when the car is shut off, it must cool down before being started again. (Tr. 32). He also said the car would start eventually as long as the battery was not depleted. (Tr. 38).
 {¶ 5} Appellant revealed that he had been drinking that evening and was on prescription medication. He and a friend walked from his house on Wick Avenue to the store to get more alcohol just before it closed at 1:00 a.m. (Tr. 33). He claimed he then walked two blocks down to the car on Thornton to see if it would start. According to appellant's testimony, he got in the driver's seat and turned the key a couple times but was interrupted by the police before he could get the vehicle started. (Tr. 42). He also advised that he had no idea the plates did not match the car. (Tr. 34).
 {¶ 6} The court found appellant guilty as charged. A presentence investigation was ordered which apparently showed that he had eight prior convictions for driving under suspension or without an operator's license. The court released its sentencing entry on March 2, 2001. The court sentenced appellant to six months on the operating under suspension charge and thirty days on the license plates charge to run concurrently with no fines or costs due to indigency. Appellant filed timely notice of appeal. Due to withdrawal of counsel and problems with the transcript, the case was not fully briefed until November 2002.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} Appellant's first assignment of error provides:
 {¶ 8} "The trial court erred in finding defendant guilty of operating a motor vehicle with illegal plates since the trial court either applied strict liability or the record at trial does not demonstrate a culpable mental state of recklessness on the part of defendant and the decision is against the manifest weight of the evidence."
 {¶ 9} At trial, the state argued that operating a vehicle with illegal plates was a strict liability offense. Appellant claims that the culpability required for this offense is recklessness rather than strict liability. He then argues that there was insufficient evidence of the reckless mental state.
 {¶ 10} In interpreting the culpability element required for this offense, appellant cites R.C. 2901.21(B) which provides:
 {¶ 11} "When a section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 {¶ 12} Appellant notes that R.C. 4549.08, which is the state statute prohibiting operating a vehicle with illegal plates, has elements identical to those relevant in the city ordinance at issue. See State v.Rosa (1998), 128 Ohio App.3d 556 (where this court used a similar state statute to determine the intent behind a Youngstown City Ordinance). According to Youngstown City Ordinance 335.12(a):
 {¶ 13} "No person shall operate or drive a motor vehicle upon the streets in this Municipality if it displays a license plate or a distinctive number or identification mark that meets any of the following criteria: (1) Is fictitious; (2) Is a counterfeit or an unlawfully made copy of any distinctive number or identification mark; (3) Belongs to another motor vehicle [with exception for timely transfer]."
 {¶ 14} Appellant cites State v. Williams (1987), 40 Ohio Misc.2d 14, where a trial court analyzed R.C. 4549.08 to determine if the statute plainly indicates a purpose to impose strict liability. The court concluded that an illegal plates violation requires a reckless mental state under R.C. 2901.21(B). Id. at 15 (noting that it could find no reported decisions in which the issue had been decided). The court distinguished the violation from one such as driving under the influence, which has been held to be a strict liability offense, as that type of offender who voluntarily consumes alcohol prior to driving. Id. at 14. In making the distinction, the court made the following valid points:
 {¶ 15} "Conceivably, a person could operate a motor vehicle in this state with no knowledge, and no way of knowing, that the plates on the vehicle were fictitious. For example, the car could be borrowed from a friend, or leased from a company, or operated for the purpose of a `test drive' to determine whether the car should be purchased. In all of the above examples, the person operating the motor vehicle would not be the owner, and furthermore, would have no way of knowing that the license plates on the vehicle were fictitious." Id. at 14-15.
 {¶ 16} Finally, the court stated that to impose strict liability for this offense would offend fundamental fairness and due process. Id. at 15. We believe the trial court in Williams correctly ruled that illegal plates requires recklessness as the mental state since the statute does not plainly indicate a purpose to impose strict liability.
 {¶ 17} Review of a Supreme Court case on strict criminal liability and the application of R.C. 2901.21(B) is helpful. In State v. Collins
(2000), 89 Ohio St.3d 524, the Supreme Court evaluated whether a failure to support statute imposed strict liability or whether the default recklessness mental state was required. The Court acknowledged "the convincing public policy arguments" presented by the state as to why failure to support should be a strict liability offense. Id. at 529. However, the court found that the statute, which basically stated that no person shall fail to support another as established by court order, did not "plainly indicate" that its purpose was to impose strict liability. Id. at 530, citing State v. Young (1988), 37 Ohio St.3d 249 (holding that recklessness is required to prove violation of statute which states that no person shall possess or view any material or performance involving a minor who is in a state of nudity) and State v. McGee (1997),79 Ohio St.3d 193 (holding that recklessness, rather than strict liability, is required to prove a violation of a statute which states that no parent shall endanger their child).
 {¶ 18} The Supreme Court went on to find that there was sufficient evidence of recklessness presented at trial. Collins,89 Ohio St.3d at 530. Two justices dissented to the part of the majority opinion that refused to impose strict liability. Id. at 531 (Stratton, J., dissenting; Waite, J., agreeing with dissent). However, even the rationale of the dissenters supports appellant's position in this case. The dissenters distinguished the two Supreme Court cases cited by the majority from Collins, stating that the statutes at issue in Young andMcGee do not evidence an intent to impose strict criminal liability because "a violation of those statutes could arise in a perfectly innocent situation, i.e., viewing a photograph of a child in a bathtub, or failing to prevent a child from running into the street. Where an innocent or negligent act could subject a parent to criminal liability, recklessness should be required in order to establish a violation of the statute." Id. at 532.
 {¶ 19} If strict liability is not imposed for statutes that protect the health, safety, and well-being of a child, then it should not be imposed for an administrative statute such as the one in the case before us. Here, a violation of Youngstown City Ordinance 335.11(A) could arise in "a perfectly innocent situation" as pointed out in the examples given in Williams. Another example would be where a criminal steals a car, he then switches your plates with that of the stolen car while you are in the store, and you later get pulled over by the police; under the state's argument, you would be strictly liable for the fourth degree misdemeanor of illegal plates. Additionally under the state's argument, if a mechanic takes a car out to diagnose its problems, she is strictly liable for illegal plates previously placed on the car by the customer who sought her services. Here, the city ordinance and the matching state statute do not "plainly indicate" a purpose to hold the operator of a car strictly liable for illegal plates. In reviewing their case law on the subject, we believe the Supreme Court would agree that recklessness is the requisite mental state for operating a vehicle with license plates that belong to another vehicle.
 {¶ 20} Because we determined that strict liability is not plainly indicated, and hence, the culpability required is recklessness, the final question is whether there is sufficient evidence of recklessness. At trial, the state argued that the violation was a strict liability offense. (Tr. 47, 51). The state did not argue in the alternative that it proved recklessness. Moreover, it does not appear to this court that the state presented any proof of the recklessness element. The car and the license plates were owned by different individuals; appellant owned neither. He claimed that he was trying to diagnose and fix the vehicle for his friend who was the registered owner of the vehicle. In fact, the state subpoenaed this owner. According to statements by the prosecutor before the trial, this owner was at court for the final pretrial of this case on January 30, she knew she was to be at the trial on February 1, but she did not show up for trial. (Tr. 3). The state did not seek a continuance to secure her presence if necessary. The state did not present any evidence or ask appellant any questions about the owner to allow an inference, if one could be made, that he was reckless in trusting that this owner had proper plates. There was no indication or evidence from which an inference could be drawn that appellant had anything to do with the license plates. As aforementioned, the state explicitly voiced that it was unnecessary to prove mental state, and thus, it did not do so.
 {¶ 21} For the above reasons, this assignment of error has merit. Accordingly, the illegal plates charge is dismissed with prejudice. SeeState v. Thompkins (1997), 78 Ohio St.3d 380 (noting that verdicts reversed on sufficiency cannot be retried as can verdicts reversed on weight). Appellant's conviction for violating Youngstown City Ordinance 335.11 is hereby reversed.
 ASSIGNMENT OF ERROR NUBMER TWO {¶ 22} Appellant's second assignment of error contends:
 {¶ 23} "The trial court erred in finding defendant guilty in that sufficient evidence was proffered to prove defendant's affirmative defense of inoperability."
 {¶ 24} Appellant urges that he carried his burden of proving the affirmative defense of inoperability by a preponderance of the evidence. See R.C. 2901.05(A). He points to his testimony that he was a trained mechanic who is regularly hired to fix the car owner's vehicles. He notes that the starter was faulty and the police did not determine whether the car would start at the scene.
 {¶ 25} In State v. Pesa (Dec. 21, 2001), 7th Dist. No. 00CA2, we advised that the defendant must overcome the inference of operability in trying to prove his affirmative defense of inoperability by a preponderance of the evidence. Id. citing State v. Shrader (Feb. 7, 1997), 6th Dist. No. OT-96-037 (noting that the vehicle's mechanical problems must be such that it could not under any reasonable circumstances have been operated by the accused). We outlined the issues as whether the defendant presented sufficient evidence of his defense and whether the trial court believed that evidence. Here, the state negatively answers both queries.
 {¶ 26} The state notes that the trial court was under no obligation to believe appellant's story about the starter. The state points out that it is unlikely one would attempt to repair someone else's car at 1:15 a.m. after drinking and after having just purchased more alcohol when there was no indication that there was an immediate need to fix the car. The trial court was in the best position to weigh the evidence and judge appellant's credibility after viewing his demeanor, voice inflection, and gestures. State v. DeHass (1967), 10 Ohio St.2d 230,231. See, also, Myers v. Garson (1993), 66 Ohio St.3d 610, 615. The court could reasonably determine that the weight of the evidence presented in support of appellant's inoperability defense did not effectively "induce belief." See State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 27} The state alternatively notes that even if the court believed appellant's version of events, it could still find that the car was operable from appellant's own admissions. For instance, appellant explained that a dragging starter meant that after the car was driven, it would not start until it cooled down. His testimony indicated that it had been hours since the car had been driven, implying that it would have been cooled off when he was found inside of it with the key in the ignition at 1:15 a.m. He specifically stated that the car would eventually start as long as the battery did not run down and that there was no special repair technique except waiting. (Tr. 38-39).
 {¶ 28} We hold that is was not against the manifest weight of the evidence to find that the car was operable and to disbelieve appellant's inoperability defense. This assignment of error is overruled.
 {¶ 29} As an aside, we note that this assignment of error does not contend that the "operating" element was not proven. Rather, the only issue is whether appellant affirmatively established that the car was inoperable. This is probably due to law stating that being in the driver's seat with the key in the ignition is operation and because here we have the further act of turning the key. See Yo. City Ord. 301.01 (defining driver or operator as any person who drives or is in actual physical control of a vehicle). See, also, State v. Gill (1994),70 Ohio St.3d 150, 154 (person in driver's seat with key in ignition is operating a vehicle within meaning of DUI statute whether or not the engine of the vehicle is running).
 {¶ 30} For the foregoing reasons, appellant's conviction of operating a vehicle with illegal plates is reversed, but his conviction of operating a vehicle while under suspension is hereby affirmed.
Waite, P.J., and DeGenaro, J., concur.