OPINION
{¶ 1} Defendant-appellant, Rodney Harris, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of criminal nonsupport, a violation of R.C. 2919.21.
 {¶ 2} On December 5, 2003, a Franklin County Grand Jury indicted appellant on two counts of criminal non-support of his dependant daughter. Both counts of the indictment specified that appellant failed to provide support for a total accumulated period of 26 weeks out of 104 consecutive weeks, elevating the charges from first-degree misdemeanors to felonies of the fifth degree. R.C. 2919.21(G)(1). Count 1 of the indictment concerned the two-year period from November 17, 1999 to November 17, 2001, while count two spanned the next two-year period from November 18, 2001 to November 18, 2003.
 {¶ 3} The case was scheduled for trial on November 4, 2005. Appellant waived his right to a jury trial and agreed to have the case submitted to the court. Prior to opening statements, the prosecution dismissed Count 1 of the indictment, choosing to proceed on count two. Accordingly, arguments and evidence submitted at trial involved only the two-year period ranging from November 18, 2001 to November 18, 2003. Following the bench trial, the court found appellant guilty of non-support and sentenced him to three years of community control. The judgment entry was filed on November 7, 2005.
 {¶ 4} Appellant appeals, raising a single assignment of error:
Appellant's conviction for nonsupport of dependents was contrary to the manifest weight of the evidence because Appellant had established the affirmative defense of inability to pay.
Thus, appellant challenges the court's judgment as against the manifest weight of the evidence.
 {¶ 5} When reviewing appellant's manifest weight argument, this court sits as a "thirteenth juror" to determine whether the greater amount of credible evidence supports the outcome in the trial court below. State v. Thompkins (1997),78 Ohio St.3d 380, 387. We must review the testimony presented in the trial court, evaluate and weigh the evidence, consider the credibility of the witnesses, and resolve any evidentiary conflict. Id. Ultimately, we must determine whether the fact-finder "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed[.]" Id.
 {¶ 6} Appellant was indicted for nonsupport, in violation of R.C. 2919.21(B). Pursuant to R.C. 2929.21(B):
No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support.
As mentioned above, appellant was charged with a fifth-degree felony for failure to provide support for an accumulated period of 26 weeks out of a consecutive 104 weeks, or two years. R.C.2919.21(G)(1).
 {¶ 7} Appellant does not dispute that he made only a single $1,000 payment during the period of the indictment. Instead, he submits that the manifest weight of the evidence demonstrates that he established an affirmative defense to the offense. Pursuant to R.C. 2919.21(D):
It is an affirmative defense to * * * a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide * * * the established support but did provide the support that was within the accused's ability and means.
In asserting this affirmative defense, appellant bears the burden of proving by a preponderance of the evidence that: (1) he was unable to provide the court-ordered support; and (2) he did provide such support as was within his ability and means. Statev. Brown (1982), 5 Ohio App.3d 220, 222. Both elements must be met in order to successfully assert the affirmative defense of inability to pay.
 {¶ 8} Appellant's ex-wife, Shonia Stokes, appeared as the prosecution's only witness. Ms. Stokes stated that she and appellant had one child together during their marriage. The couple's daughter was born on July 18, 1990. About four years later, Ms. Stokes and appellant were divorced. As part of the judgment entry granting the divorce, the Franklin County Court of Common Pleas, Division of Domestic Relations, ordered appellant to pay Ms. Stokes approximately $350 per month in child support through the Franklin County Child Support Enforcement Agency ("FCCSEA").
 {¶ 9} Ms. Stokes testified that she received regular child support payments from appellant for some time directly after the divorce. However, she stated that during the period of the indictment — November 18, 2001 to November 18, 2003 — appellant was not consistent in making the child support payments. At the end of Ms. Stokes' testimony, the state entered several documents into evidence, including a record of appellant's payments from FCCSEA.
 {¶ 10} Appellant then took the stand on his own behalf. He testified that he graduated from high school in 1983. After graduating, he enlisted in the Navy, where he was trained in the telecommunications field. After six years in the Navy, he re-entered civilian life and obtained further telecommunications training through a vocational program. Appellant stated that telecommunications is the only career for which he is trained.
 {¶ 11} At the time of the divorce, appellant worked servicing and installing voice and date equipment for a telecommunications company in Columbus. However, sometime in the mid-to-late '90s, appellant was laid-off in a downsizing. After some searching, appellant found jobs with other telecommunications companies, eventually obtaining a job with Radio Shack. Appellant held his job as a project manager with Radio Shack for three to four years. In 2001, appellant was again laid-off when his group was phased out during a merger.
 {¶ 12} After he lost his job with Radio Shack, appellant attempted to find more work in the telecommunications field. Unable to find a job, appellant received unemployment compensation. During this time period, appellant was going through a second divorce and was moving around quite a bit. He testified that he "was basically homeless at the time." However, he also testified that he lived with his father during this time.
 {¶ 13} Appellant testified that he continued his job search by signing up with the "Job and Welfare Department," which he visited weekly to inquire about job opportunities in his field. He also submitted applications with federal, state and county offices, Coca-Cola, the airport, post office and telecommunications companies around Columbus. Appellant stated that he searched for jobs on the internet during the day and knocked on doors.
 {¶ 14} As time went on, appellant indicated that he broadened his job search to positions outside of telecommunications. However, he did not pursue jobs in the fast food, lawn care, or retail industries. Appellant stated that he had no background or training in those industries and did not believe he would be hired. Moreover, appellant did not think he could satisfy his support obligations working for a fast food restaurant. Appellant's only employment during this time was through temporary assignments such as a short stint with a security company. Despite his inability to get a job, appellant testified that he was a healthy, able-bodied man, uninhibited from physical labor or hard work.
 {¶ 15} In early 2002, appellant's father passed away. Appellant received approximately $17,514 as a beneficiary of his father's IRA.[1] In December 2002, appellant made a $1,000 child support payment to FCCSEA. This was the only payment appellant made during the period of the indictment. Although appellant could have sought a modification of his child support obligation at any time during this period, he did not do so until May 2004. Soon thereafter, appellant moved to Georgia to seek employment.
 {¶ 16} Given the above testimony, we cannot say that the trial court lost its way in convicting appellant. The prosecution presented evidence that appellant recklessly failed to provide support, as ordered within the valid divorce decree, for at least 26 weeks of a consecutive period of 104 weeks. Appellant's recklessness can be inferred from the fact that he knew he was obligated to support his daughter but knowingly failed to do so.State v. Collins (2000), 89 Ohio St.3d 524, 530.
 {¶ 17} In rebuttal, appellant attempted to establish the affirmative defense of inability to pay. Appellant asserts that he demonstrated this inability in that he was unemployed and "basically" homeless during the period of the indictment. However, there is undisputed evidence that appellant came into approximately $15,000 when his father died. At that time, he made a single $1,000 payment towards a total accumulated obligation of $14,390. Appellant testified that he could not afford to pay more and still support himself. Yet, appellant also testified that he lived with his father, or in his father's house, during this time, and his mother and sisters would bring him food and made sure he did not go hungry.
 {¶ 18} Despite his reportedly dire circumstances, he was able to live with the support of his family, yet failed to share that support with his own child. Moreover, while it is understandable that appellant would seek employment within his field of expertise, the fact that he failed to pursue jobs in other industries because they would not be financially beneficial contradicts any claim that he lacked the means to support his daughter. As the Supreme Court of Ohio stated in Brown: "Lack of means alone cannot excuse lack of effort[.]" Id. at 222.
 {¶ 19} After reviewing the testimony presented during trial, we find that the evidence supports the trial court's conclusion that appellant failed to establish the affirmative defense of inability to pay by a preponderance of the evidence. We overrule appellant's assignment of error.
 {¶ 20} Having overruled the single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Klatt, P.J., and French, J., concur.
[1] After taxes, appellant received an approximate total of $15,000.