OPINION
{¶ 1} Defendant-appellant Charles Ray Barton appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of carrying concealed weapons, one count of possessing criminal tools and one count of tampering with coin machines. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 17, 2006, the Stark County Grand Jury indicted appellant on one count of carrying concealed weapons in violation of R.C. 2923.12(A)(1), a felony of the fourth degree, one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree, and one count of tampering with coin machines in violation of R.C. 2911.32(A), a felony of the fifth degree. At his arraignment on November 9, 2006, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} Subsequently, a jury trial commenced on December 19, 2006. The following testimony was adduced at trial.
 {¶ 4} On August 25, 2006, at approximately 4:30 a.m., Michelle Greene, who lives on Cleveland Avenue, N.W., returned home after taking her husband to work. After she heard an odd noise, Greene turned around while on the steps on her porch and saw two young men trying to steal the mailbox from a Little Caesar's parking lot on Cleveland Ave., N.W. At the time that she heard the noise, which she testified sounded "like metal squeaking", Greene was at the corner of 19th
Street, N.W. and Cleveland Avenue in the City of Canton. Transcript from Dec. 19, 2006, at 110.
 {¶ 5} At trial, Greene testified that one of the men was wearing a white shirt while the other had on a black shirt. One of the men was wearing a tank top. According *Page 3 
to Greene, who testified that she was about 30 to 50 yards away at the time, the two men "started grabbing the pole and jerking it back and forth." Transcript from Dec. 19, 2006 at 112. Greene then called 911 while standing at her window and watching until the police arrived. She testified that she remained at her window until the police arrived on the scene.
 {¶ 6} At trial, Officer Eric Jackson of the Canton Police Department testified that, on August 25, 2006, he was in uniform in a marked cruiser when he was dispatched to the area of Cleveland and 19th Street, N.W. Officer Jackson testified that "the details that I received was that individuals were trying to break into a postal box and also tampering with a telephone." Transcript from Dec. 20, 2006 at 7. Once he arrived on the scene, the officer observed two white male subjects standing at 19th and Cleveland. One of the men appeared to be talking on the pay phone while the other was standing to his right. According to the officer, the man on the pay phone was wearing a black tank top while the other man had on dark clothing.
 {¶ 7} Officer Jackson testified that, as he pulled up and exited his cruiser, the man on the phone turned around and started walking away. The man was appellant. When the officer told him to stop, the man began to run and ran behind a house located directly behind Little Caesar's Pizza. Officer Jackson testified that he then heard an engine start up and observed the man, who was wearing a ball cap, remove his ball cap and proceed westbound on 19th Street then southbound on Ames. After the officer activated his lights, he pulled over the vehicle after a short chase.
 {¶ 8} Once back-up assistance arrived, appellant was arrested and his car was impounded. Officer Jackson testified that appellant's car was then inventoried. *Page 4 
 {¶ 9} On cross-examination, Officer Jackson testified that the mailbox is on 19th Street while the telephone pole is on Cleveland Avenue. He later testified that the two were 10 to 15 feet apart.
 {¶ 10} The next witness to testify was Officer Anthony Birone of the Canton Police Department. Officer Birone testified that he was dispatched to the area of Cleveland and 19th Street, N.W. on August 26, 2006, and arrived after Officer Jackson. When he arrived on the scene, Officer Birone observed Officer Jackson following a vehicle. Officer Birone testified that he followed the two vehicles and that, once appellant was taken into custody, he inventoried appellant's vehicle. Officer Birone testified that, during the inventory, he found a sledgehammer, a pipe and a black nylon case containing two martial arts throwing knives. The case was found in the middle in front of the center console. The officer also testified that he found a pry tool, a hacksaw, a hammer and a 6 inch knife.
 {¶ 11} Officer Birone testified that he returned to the area where appellant was first seen and collected evidence there. He testified that he collected a large spud bar, a pair of tin snips and bolt cutters. The officer testified that he recovered the tin snips in front of the mailbox and the spud bar between the mailbox and pay phone. He further testified that he recovered the bolt cutters "located propped up in the pay phone box next to the actual phone." Transcript from December 20, 2006 at 47. When asked whether there was any damage to the pay phone, the officer testified as follows:
 {¶ 12} "A. Yes, there were (sic).
 {¶ 13} "Q. If could you describe that damage. *Page 5 
 {¶ 14} "A. Uh, is — the phone was on a pole held on by three or four metal bar brackets and that was all encased in a tin black metal or tin casing. And is — what happened is the casing was cut and you could tell the, um, brackets, the metal brackets were starting — were — an attempt had been made to cut those as well.
 {¶ 15} "Q. So there's, there's a metal cover, correct?
 {¶ 16} "A. Right.
 {¶ 17} "Q. And then there's actual brackets. How many?
 {¶ 18} "A. I believe three or four.
 {¶ 19} "Q. And how thick are these metal brackets, if you recall?
 {¶ 20} "A. I don't know. The brackets weren't very thick." Transcript from December 20, 2006 at 48-49.
 {¶ 21} On cross-examination, Officer Birone testified that Michelle Greene's house was a block away from Little Caesar's Pizza on the other side of the street. On redirect, he testified that her house was 50 yards away. Testimony also was adduced that he found a flashlight and screwdriver in appellant's vehicle.
 {¶ 22} After the State rested, appellant orally moved for a Crim.R. 29 motion for judgment of acquittal. The same was denied by the trial court.
 {¶ 23} At trial, appellant testified that he had prior convictions for grand theft, receiving stolen property, failure to comply and reckless operation. He further testified that, as of the time of the trial, he was on parole for robbery. Appellant testified that, on August 25, 2006, he was driving his sister's car and went to visit his nephew Duane. According to appellant, Duane had borrowed the car earlier that evening to pick up his wife and then, later the same evening, appellant's friend Jeff also borrowed the car. *Page 6 
Appellant testified that Jeff returned without the car, claiming that the car had run out of gas. Appellant testified that he knew that the car had not run out of gas since he had just filled it and that he went to pick up the car at Cleveland and 19th and that Jeff and Dale accompanied him.
 {¶ 24} Appellant testified that when he found the car parked on the street, he went to the pay phone to call his sister and tell her that he had found the car. Appellant testified that he walked away when Officer Jackson pulled up because he was out after curfew and was worried that he would get into trouble with his parole officer if he talked to the police. Appellant testified that he had never seen the pry bar and the tin snips. He further testified that the knives belonged to his nephew Duane who had used the car earlier that evening. According to appellant, none of the tools in the car were his.
 {¶ 25} On cross-examination, appellant testified that he did not notice the bolt cutters sitting beside the pay phone. When asked why he ran from the police, appellant testified that he was scared because of his parole officer and that he would have gotten into trouble if the police had caught him.
 {¶ 26} At the conclusion of the evidence and the end of deliberations, the jury, on December 20, 2006, found appellant guilty of one count each of carrying concealed weapons, possessing criminal tools and tampering with coin machines. Pursuant to a Judgment Entry filed on January 2, 2007, appellant was sentenced to an aggregate prison sentence of sixteen months.
 {¶ 27} Appellant now raises the following assignments of error on appeal: *Page 7 
 {¶ 28} "I. THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 {¶ 29} "II. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT."
 I {¶ 30} Appellant, in his first assignment of error, argues that his convictions for carrying concealed weapons, possessing criminal tools and tampering with coin machines are against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 31} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at syllabus 2.
 {¶ 32} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised *Page 8 
only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 33} Appellant, in support of his first assignment of error, argues that this is a case of misidentification. Appellant notes that the only witness, Michelle Greene, was watching from a block away in the dark. Appellant also notes that Greene described one of the individuals on the scene as wearing a white shirt and the other a dark shirt and never mentioned a baseball cap, but Officer Jackson testified that he saw two men in dark clothing and one was wearing a baseball cap. Appellant also maintains that while Greene testified that she was watching the suspects the entire time, it is clear from the 911 tape that there was one significant gap in her observation.
 {¶ 34} Appellant also argues that the knives found in the car did not belong to him but belonged to his nephew and that he was never found in possession of any of the tools found near the pay phone.
 {¶ 35} However, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that appellant was guilty of all of the charges. As is stated above, Michelle Greene saw two young men attempt to steal a mailbox at the Little Caesar's pizza shop which was a block away. She testified that, while keeping an eye on the men, she called 911. Greene further *Page 9 
testified that she stayed on the phone watching the men until the police arrived. When Officer Jackson arrived on the scene, he saw two men at a pay phone approximately ten feet from the mailbox. Appellant, who was on the phone, started to walk away and disregarded Officer Jackson's order to stop. Appellant then got into a car and drove off, forcing Officer Jackson to pursue appellant in his cruiser. After appellant was stopped, tools and martial arts throwing knives were found in the car he was driving. Bolt cutters were later found propped up in the pay phone box next to the actual phone that appellant had used. Based on the foregoing, we find that any rational trier of fact could have found appellant guilty of all of the charges.
 {¶ 36} Moreover, upon our review of the record as a whole, we find that the jury, as trier of fact, did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed.
 {¶ 37} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 38} Appellant, in his second assignment of error, argues that he was denied his right to a fair trial due to prosecutorial misconduct. We disagree.
 {¶ 39} During closing arguments in the case sub judice, the prosecutor commented about the failure of appellant's friends and family to testify. The prosecutor noted that while appellant testified that the knives and tools found in the car belonged to other people and that he did not know that they were there, appellant failed to have the alleged owners of the same testify in his defense. Appellant now contends that, in so commenting, the State improperly shifted the burden of proof to him. *Page 10 
 {¶ 40} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591,112 L.Ed.2d 596. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the contest of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464,91 L.Ed.2d 144
 {¶ 41} As noted by the court in State v. Collins, 89 Ohio St.3d 524,527, 2000-Ohio-231, 733 N.E.2d 1118, "It is long-standing precedent that the state may comment upon a defendant's failure to offer evidence in support of its case. State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 193,616 N.E.2d 909, 916; State v. Williams (1986), 23 Ohio St.3d 16, 20, 23
OBR 13, 17, 490 N.E.2d 906, 911; State v. Petro (1948),148 Ohio St. 473, 498, 36 O.O. 152, 162, 76 N.E.2d 355, 367; and State v.Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141, 143-144. Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent."
 {¶ 42} We concur with appellee that the prosecutor fairly commented on the fact that appellant failed to offer evidence in support of his defense that the knives and tools found at the scene and/or in the car were not his. We find therefore, that there was not prosecutorial misconduct and that appellant was not denied his right to a fair trial. *Page 11 
 {¶ 43} Appellant's second assignment of error is, therefore, overruled.
 {¶ 44} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J., Gwin, P.J., and Hoffman, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1