OPINION
{¶ 1} Appellant William D. Ray challenges his conviction on two counts of felonious assault on the grounds that he was convicted against the manifest weight of the evidence. The record contains overwhelming evidence that Appellant shot his friend point blank in the face with a 22 caliber pistol, and that the shooting was not an accident. For the reasons stated herein, the judgment of the Jefferson County Court of Common Pleas is hereby affirmed.
 {¶ 2} On February 7, 2003, Appellant was indicted in Jefferson County on two counts of felonious assault with firearm specifications, in violation of R.C. § 2903.11(A). He was also indicted on a single count of attempted murder (with a firearm specification), burglary, tampering with evidence and theft. The case went to trial on June 19, 2003. The attempted murder charge was dropped prior to trial. There was testimony at trial that, on December 21, 2002, Appellant and his friend Raymond Grimm were together performing work on a car and then spent some time driving around in Mr. Grimm's car. (Tr., pp. 233, 235.) They went to Appellant's mother's house and consumed a bottle of vodka and some eggnog. (Tr., pp. 236-237.) They then drove to the home of George Minear to find marijuana. (Tr., p. 238.) Mr. Minear was not home, so they spent some time at a neighbor's house, and left at about 1:00 a.m. on December 22, 2002. (Tr., p. 239.)
 {¶ 3} Mr. Grimm testified that as they started to leave, Appellant said that he had to urinate and Grimm stopped the car. (Tr., p. 239.) Appellant walked back toward Mr. Minear's driveway, returning about five minutes later. (Tr., p. 239.) The two men drove from the Minear's residence. A short time later, Appellant told Mr. Grimm to get some beer. At this point it was about 1:15 a.m. Mr. Grimm stated that it was too late to get beer. (Tr., p. 241.) Appellant then pulled a gun out of his jacket and put it up to Mr. Grimm's head. (Tr., p. 242.) Mr. Grimm, who was familiar with handguns, identified the gun as a 22 caliber stainless steel handgun. (Tr., p. 243.) Appellant told Mr. Grimm to take him to Steubenville. Mr. Grimm refused and stopped the car. (Tr., p. 242.) Mr. Grimm pushed the gun away, and told Appellant to "quit fucking around." (Tr., p. 242.) Appellant put the gun up to Mr. Grimm's face again, and once again Mr. Grimm told Appellant to "quit fucking around." (Tr., p. 244.) Appellant refused, cursed at Mr. Grimm and fired the gun into Mr. Grimm's face. (Tr., p. 244.)
 {¶ 4} After Mr. Grimm reacted in surprise to Appellant, Appellant continued to point the gun at Mr. Grimm's head. (Tr., p. 245.) Mr. Grimm got out of the car and started running. Appellant started to follow Mr. Grimm and threatened to kill him. (Tr., p. 246.) Mr. Grimm testified that he was in great pain. He felt fragments of teeth floating in his mouth, and stuffed a handkerchief in his mouth to control the bleeding. (Tr., p. 246.) Mr. Grimm testified that he lost eight teeth and part of his jaw due to the shooting, and that he still has bullet fragments embedded in his mouth. (Tr., pp. 255-256.) The record also contains evidence that Mr. Grimm had gunpowder burns on his face from the shooting. (Tr., p. 252.)
 {¶ 5} Mr. Grimm testified that Appellant continued to shoot at him as he ran from the car, and that he could hear the bullets going through the trees around him. (Tr., p. 258.)
 {¶ 6} Appellant gave a statement to the police indicating that while he was in the car arguing with Mr. Grimm, the gun went off when Mr. Grimm slammed on the brakes. (Tr., p. 180.) In his statement Appellant says he fled the scene, went home, and burned his clothes because, "I was scared and did not know if Ray Grimm was hit or not." (Tr., p. 180.)
 {¶ 7} Mr. George Minear testified that Appellant sold him a silver 22 caliber handgun with a pearl handle. Mr. Minear testified that the gun did not have a hairtrigger or an easily activated trigger, that it was in working order, and that he kept it at his home. (Tr., pp. 218, 220.) Mr. Minear testified that he was in South Carolina at the time of the shooting, and was asked by local police to return home. When he returned on December 22, 2002, he found the glass on his front door shattered, and also found blood spots in his home that were later identified as Appellant's blood. (Tr., pp. 206, 214, 223.)
 {¶ 8} In contrast to Mr. Grimm's testimony, Appellant testified that after they arrived at the Minear residence, he and Mr. Grimm both entered the house and that Mr. Grimm found the gun. (Tr., p. 309.) He testified that he got into an argument with Mr. Grimm over who should keep the gun. (Tr., p. 309.) Appellant also testified that they argued about whether to sell the gun for crack cocaine or for beer. (Tr., pp. 309-310.) Appellant testified that after they had returned to the car, Mr. Grimm asked to see the gun. (Tr., p. 311.) Appellant stated that he did not know if the gun was loaded, and did not want to hand someone a loaded gun. (Tr., p. 311.) Appellant testified that it was "pitch black" at the time, but that he wanted to, "check and see if the gun is loaded." (Tr., pp. 311, 334.) According to Appellant, Mr. Grimm then slammed on the brakes, and the gun went off. (Tr., p. 312.) It was Appellant's contention that he did not actually pull the trigger of the gun. (Tr., p. 313.) He also stated that he did not realize that Mr. Grimm had been shot. (Tr., pp. 313-314.) Appellant admitted burning the clothes that he had been wearing at the time of the shooting. (Tr., p. 317.) Appellant also claimed to have lost the gun while he was fleeing the scene of the shooting. (Tr., p. 336.)
 {¶ 9} On February 20, 2003, the jury convicted Appellant on two counts of felonious assault with firearms specifications, one count of burglary, one count of tampering with evidence, and one count of theft. On June 25, 2003, the trial court filed its judgment entry sentencing Appellant to ten years in prison on the combined charges. The court merged the sentences on the two felonious assault charges, as they were based on the same single incident. On July 21, 2003, Appellant filed this timely appeal.
 {¶ 10} Appellant's sole assignment of error asserts:
 {¶ 11} "The jury verdict of guilty for the offenses of felonious assault was against the manifest weight of the evidence."
 {¶ 12} The issue as to whether a trial court judgment is against the manifest weight of the evidence was addressed in State v. Thompkins
(1997), 78 Ohio St.3d 380, 678 N.E.2d 541:
 {¶ 13} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 14} Thompkins also held that, in an appeal based on the manifest weight of the evidence, the court, in light of the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 387, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.
 {¶ 15} When reviewing a trial court's decision on manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. Id. citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211,72 L.Ed.2d 652. To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. Id. at 389, 678 N.E.2d 541.
 {¶ 16} Appellant was convicted under both sections of the felonious assault statute, R.C. § 2903.11, both of which are first degree felonies:
 {¶ 17} "(A) No person shall knowingly do either of the following:
 {¶ 18} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 19} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 20} The element of the crime that Appellant believes was not proven was the mens rea, or criminal intent. Appellant contends that he did not knowingly shoot Mr. Grimm, but rather, that the shooting was an accident. The term "knowingly" is defined as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. § 2901.22(B). Criminal intent is usually proven through the use of circumstantial evidence. State v.Collins (2000), 89 Ohio St.3d 524, 530, 733 N.E.2d 1118. "[C]riminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Johnson (2001),93 Ohio St.3d 240, 245, 754 N.E.2d 796, quoting State v. Pruett (1971),28 Ohio App.2d 29, 34, 57 O.O.2d 38, 273 N.E.2d 884.
 {¶ 21} The record contains substantial evidence supporting the jury's conclusion that Appellant knowingly committed felonious assault. There was testimony that Appellant pushed the gun into Mr. Grimm's face, that Mr. Grimm pushed the gun away, and that Appellant put the gun up to his face again and fired. Appellant himself testified that the two of them were involved in arguments both about the gun and about what they should do with any money they might get from selling the gun. The evidence reveals that Appellant was familiar with the gun and that it did not have a particularly sensitive trigger. Evidence that there were powder burn marks on Mr. Grimm's face was introduced. Mr. Grimm also testified that Appellant continued to shoot at him as he ran away from the car.
 {¶ 22} Although there are some aspects of Appellant's testimony that could possibly support his theory that the shooting was an accident, the jury apparently did not believe that testimony. Appellant contends that he and Mr. Grimm both broke into Mr. Minear's house, however, only Appellant's blood was found in the house. Appellant claimed that just before the gun discharged, he was checking to see if it was loaded. Appellant had just testified that it was so dark as to be "pitch black" at the time. Appellant testified that he did not know that Mr. Grimm had been shot and did not see any blood in the car, and yet he fled from the scene and soon afterward burned all the clothes he had been wearing.
 {¶ 23} Given the eyewitness testimony from the victim, supported by certain aspects of Appellant's own testimony and other circumstantial evidence, it is clear that the jury did not lose its way in finding that Appellant had the necessary criminal intent to support a conviction for felonious assault. The judgment of the Jefferson County Court of Common Pleas is affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.