[Cite as *State v. Crist*, 2016-Ohio-7750.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-63 |
| SHONN A. CRIST | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Fairfield County Court of Common Pleas, Case No. 2015CR135

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     November 14, 2016

APPEARANCES:

For Plaintiff-Appellee

GREGG MARX
Prosecuting Attorney
ANDREA GREEN
Assistant Prosecutor
239 W. Main Street, Ste. 101
Lancaster, OH 43130

For Defendant-Appellant

DAVID SAMS
P.O. Box 40
West Jefferson, OH 43162

*Gwin, P.J.*

{¶1}    Appellant Shonn A. Crist ["Crist"] appeals his convictions after a jury trial in the Fairfield County Court of Common Pleas on three counts of Sexual Battery, in violation of R.C. 2907.03(A)(5)&(B), felonies of the third degree, and one count of Rape, in violation of R.C. 2907.02(A)(2)&(B), a felony of the first degree.

*Facts and Procedural History*

{¶2}    On April 10, 2015, the Fairfield County Grand Jury indicted Crist on three counts of Sexual Battery, in violation of R.C. 2907.03(A)(5)&(B), felonies of the third degree, and one count of Rape, in violation of R.C. 2907.02(A)(2)&(B), a felony of the first degree.

{¶3}    On October 12, 2015, the state filed a motion for proposed jury instruction regarding the element of force of a parent or other authority figure within the offense of Rape. Crist's trial counsel filed no motions requesting or opposing specific jury instructions.

{¶4}    This matter proceeded to a jury trial on October 20, 2015.  Prior to any evidence being presented, the trial court allowed the specific jury instruction on force because the allegations made in the case involved parent and child.  Crist did not object.

{¶5}    The following evidence was presented during Crist's jury trial.

{¶6}    Crist is the biological father to S.C., b. Feb. 12, 1997.  (4T. at 582).  S.C. began living with Crist full time when she was a freshman in high school at age 14.  (3T. at 526).  S.C. moved in with Crist because her living situation with her mother was chaotic, and Crist's home was more stable.  Crist began grooming S.C. Crist told S.C. that he needed to teach her how to be affectionate.  He would excessively hug her, cuddle with her on the couch or in his bed, kiss her on the lips and ask her to give him kisses.

Crist would discuss with S.C. topics such as sex, pornography, and masturbation, and would tell her that she had nice breasts. Crist gave S.C. money to go purchase a new bra, instructed her as to what kind of bra to purchase, and asked her to model it for him when she returned home. (3T. at 534-537).

{¶7} The first incident of sexual conduct occurred in March 2013. Crist gave S.C. money because she had gotten good grades. (3T. at 541 – 542). He took her shopping, and when they returned home, Crist kissed S.C., and engaged in both sexual contact and conduct with her while in the garage. Once inside the home, Crist led S.C. to his bedroom and engaged in further sexual conduct with her, and instructed her as to what she was to do. (3T. at 545 – 549). S.C. did not know how to think, feel or react to what Crist had done to her.

{¶8} A few days later, S.C. asked her maternal grandmother if she could stay the night with her for Easter, because she wanted to get out of Crist's house. Once at her grandmother's home, S.C. told her grandmother what Crist had done to her, and a police report was filed. (2T. at 554). Fairfield County Child Protective Services (CPS) was notified, and S.C. underwent a physical exam at Nationwide Children's Hospital. (2T. at 435-38; 554). S.C. had internal injuries consistent with the sexual assaults that she reported. (2T. at 443; 499-500). Pursuant to the CPS case plan, S.C. continued to stay in her maternal grandparents' home.

{¶9} Despite the no contact order that was put in place, Crist initiated contact with S.C., and she relented. Crist told S.C. that if she said that nothing had ever happened between them, that life could go back to normal and he would buy her a car. Crist convinced S.C. that she had been wrong to tell on him, and that it would not happen

again. Crist told S.C. that if she kept telling people that he abused her that he would get her put into a mental hospital, and that she would be labeled as a sexual predator. (3T. at 637; 4T. at 866). Crist told S.C. that she needed to recant, that it would not happen again, and that everything would go back to normal. During this time, S.C.'s mother led her grandparents to believe that she was misbehaving, which led to a stressful living environment for S.C. Because of this, S.C. thought she might be happier living at the home of Crist's parents. (3T. at 558-59). Crist told S.C. that she could only live there if she recanted, so at Crist's urging, S.C. recanted the allegation to her caseworker. (3T. at 558-60).

{¶10} In the fall of 2013, S.C. was a junior in high school. S.C. moved into the home of Crist's mother. Crist lived just a few doors down the street, and because S.C. did not have a car, he became her main mode of transportation to and from work. (3T. at 561-67). Crist saw S.C. daily, as he took her to and from work every day. When Crist took S.C. to work, he began to again sexually abuse her. Crist engaged in various types of sexual conduct, including oral and vaginal intercourse with S.C. two to three times a week. (3T. at 732-33; 5T. at 898-99). The types of sexual conduct varied, and occurred so frequently that she could not keep track. Id.

{¶11} S.C. began to notice a correlation between gifts Crist gave her and his sexual advances. She noticed that he would give her money or buy her new clothes, and then a day or two later he wanted to have sex with her. (4T. at 736-37). S.C. began to stop accepting the gifts, hoping that if she did not accept them, he would not ask her for sex. (4T. at 737-38).

{¶12} Crist told S.C. that if she disclosed what was occurring, that she would be labeled, and be made to look crazy.  (4T. at 866; 5T. at 904).  Based on her prior disclosures of sexual abuse, S.C. saw a counselor regularly, and as a part of her case plan, she engaged in family sessions that included Crist.  In these sessions, Crist denied that there had been any inappropriate conduct.  This led S.C. to believe that what happened was her fault.  (3T. at 571 - 572).

{¶13} In early 2014, S.C. stopped being a passive participant in this sexual activity, and began resisting her father's sexual advances both physically and verbally.  (3T. at 575-76).  S.C. swatted his hands and pushed him away.  (3T. at 576; 4T. at 734-36).  The majority of the time Crist would not accept no for an answer, and sometimes would hold her down and have forcible vaginal intercourse with her.  (3T. at 576-78).  In March of 2014, S.C. contacted her CPS caseworker and disclosed the truth about the sexual abuse that had occurred in 2013 and 2014.  (3T.at 578-79).  Crist had informed S.C. that he may gain custody of her younger sister, and S.C. was concerned that her little sister might also be victimized if she was not truthful about what had been going on.  (3T. at 579-81).

{¶14} Detectives spoke with Crist, and during this interview, he admitted that sexual conduct might have occurred with S.C. Crist provided explanations and placed blame on his daughter for initiating sexual encounters.  (1T. at 170; 212-233; 2T. at 245-86).  S.C. recorded phone calls that took place between her and Crist.  In these calls, Crist accused S.C. of "playing victim" and said that as long as she was not around, he was able to be "good."  (3T. at 591-92).  His "problems" only ever occurred when she started living with him.  (3T. at 633; 671).  Crist told S.C. he would talk more about what

happened in person, and did not deny that he abused her. (3T.at 591-95; 634-35). Crist told S.C. that he would buy her a new car and a new phone, and suggested that if she recanted like she did before, that it would all go away. (4T. at 730-50). Crist told S.C. that she was the aggressor, and that he would not let it happen again. (3T. at 648 - 649; 4T. at 755). Crist implicitly admitted to having sex with S.C., and apologized for his actions. (3T. at 702-07; 721-22; 6T. at 1235-41).

**{¶15}** At the conclusion of the five-day trial the jury returned a verdict finding Crist guilty of all four counts as charged in the Indictment. On November 6, 2015, Crist was sentenced to serve 11 years in a state penal institution on the rape charge. Crist was sentenced to a term of community control as to Counts 1 and 2, sexual battery charges. The trial court found that Count 3, sexual battery, merged with Count 4, Rape.

*Assignments of Error*

**{¶16}** Crist raises two assignments of error,

**{¶17}** "I. THE TRIAL COURT ERRED WHEN FAILING TO INSTRUCT THE JURY THAT FORCE IN A RAPE PROSECUTION UNDER R.C. 2907.02(A)(2) REQUIRED PHYSICAL VIOLENCE, COMPULSION, OR CONSTRAINT.

**{¶18}** "II. THE TRIAL COURT ERRED WHEN INSTRUCTING THE JURY THAT INFERENCES COULD BE DRAWN FROM "CIRCUMSTANCES" PROVEN IN THE CASE."

*Standard of Review*

**{¶19}** The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462(3rd Dist. 1993). In order to find an abuse of that

discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

**{¶20}** Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

**{¶21}** Crist did not file a written request for specific jury instructions, and did not object to the trial court's jury instructions. Based upon Crist's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for

consideration, we must address Crist's two assignments of error under the plain error doctrine.

**{¶22}** In *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35(1999) the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not *necessarily* render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

**{¶23}** Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

**{¶24}** The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. at 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 308(1993); *State v. Perry*, 101 Ohio St.3d 118, 120 802 N.E.2d 643, 646(2004). Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. *Perry, supra*, at 118, 802 N.E.2d at 646.

**{¶25}** An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Cunningham*, 105 Ohio St.3d 197, 824 N.E.2d 504, 2004–Ohio–7007, ¶ 56. *See, also, State v. Adams* 62 Ohio St.2d 151, 154, 404 N.E.2d 144(1980) (holding that a trial court's failure to specifically charge the jury on every element of an offense is not per se plain error, but could result in plain error if the failure substantially prejudiced the defendant). Appellate courts notice plain error "'with the utmost caution, under exceptional circumstances [,] and only to prevent a manifest miscarriage of justice.'" *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002–Ohio–68, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus.

I.

**{¶26}** In his first assignment of error, Crist argues that the jury instruction on parental force in this case in relation to the charge of rape pursuant to R.C. 2907.02(A)(2) was in error.

**{¶27}** R.C. 2907.02(A)(2) provides

No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

* * *

(C) A victim need not prove physical resistance to the offender in prosecutions under this section.

**{¶28}** R.C. 2901.01(A)(1) defines "force,"

"Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.

In the case at bar, the trial court instructed the jury,

Force: This means any violence, compulsion, effort or constraint exerted or used by any means upon or against a person or thing.

6T. at 1261. Crist argues that the trial court's failure to include the word "physically" in the definition of the term "force" that was given to the jury was error. Crist contends that psychological pressure and manipulation by a father against a daughter is not sufficient to find force.

{¶29} In *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304(1988), the Ohio Supreme Court expanded the definition of "force" in a case involving the rape of a four year old child by her father. The Supreme Court held:

The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength. (*State v. Labus* [1921], 102 Ohio St. 26, 38–39, 130 N.E. 161, 164.).

*Eskridge,* para. 1 of the syllabus.

{¶30} Later, in *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661(1992), the Supreme Court again expanded the definition of force in the context of a pattern of incest

between a father and his twenty-year-old daughter. Although the Court found the state did not prove the elements of forcible rape, it held:

> A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit. A threat of force can be inferred from the circumstances surrounding sexual conduct, but a pattern of incest will not substitute for the element of force where the state introduces no evidence that an adult victim believed that the defendant might use physical force against her. (*State v. Eskridge* [1988], 38 Ohio St.3d 56, 526 N.E.2d 304, distinguished.)"

*Schaim*, at paragraph 1 of the syllabus.

{¶31} In the case at bar, we decline to use the definition of "force" applied in *Schaim* because the victim in that case was an adult. Here, the victim was not an adult when she was sexually assaulted. She was a minor and still considered a child. The victim was not of so tender an age, however, as the child in *Eskridge.* Therefore, the question is whether her will was overcome by fear or duress. *See, State v. Oddi,* 5th Dist. Delaware No. 02CAA01005, 2002-Ohio-5926, ¶57 ("The minors involved in this case are younger from the twenty-year old adult the Supreme Court faced in *Schaim,* but neither were they children of tender years.").

> "[I]n determining whether a course of conduct results in duress, the question is not what effect such conduct would have upon an ordinary man but rather the effect upon the particular person toward whom such conduct is directed, and in determining such effect the age, sex, health, and mental

condition of the person affected, the relationship of the parties and all the

surrounding circumstances may be considered."

*State v. Getsy*, 84 Ohio St.3d 180, 206 (1998), *quoting Tallmadge v. Robinson*, 158 Ohio

St. 333 (1952).

**{¶32}** In the case at bar, the trial court instructed the jury,

Force of a parent or other authority figure: When the relationship

between the victim and the Defendant is one of child and parent, the

element of force need not be openly displayed or physically brutal. It can

be subtle, slight, psychologically and emotionally powerful. Evidence of an

express threat of harm or evidence of significant physical restraint is not

required. If you find beyond a reasonable doubt that under the

circumstances in evidence, the victim's will was overcome by fear, duress,

or intimidation, the element of force has been proved.

6T. at 1261.

**{¶33}** We find that the trial court's instructions correctly stated the law as it applies

to Crist's case. The victim was 14 years old at the time the abuse began. She was Crist's

daughter and was living with him at the time. Initially, the abuse was reported to the police.

However, Crist pressured the girl to recant, telling her he would get her put into a mental

hospital, and that she would be labeled as a sexual predator. Crist told S.C. that she

could only live at the home of his parents if she recanted. In early 2014, S.C. stopped

being a passive participant in this sexual activity, and began resisting her father's sexual

advances both physically and verbally.

**{¶34}** In *State v. Eskridge,* the Supreme Court observed,

"In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it. In such a case, we find nothing unreasonable about a finding that the child's will was overcome. Consequently, the forcible element of rape was properly established." *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182, 187, 500 N.E.2d 390, 395.

In *Fowler*, the defendant, the stepfather of the fourteen-year-old victim, challenged his conviction for rape by force or threat of force on the grounds, among several, that the use of force or threat of force had not been proven.

"* * * Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults with a history of consensual intercourse. The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose." *State v. Etheridge* (1987), 319 N.C. 34, 47, 352 S.E.2d 673, 681. In the present case, Eskridge was the victim's father and, at the time of the rape, was babysitting her. He therefore held a position of authority over her which did not require any explicit threats or displays of force.

38 Ohio St.3d 56, 59,526 N.E.2d 304(1988).

{¶35} The trial court's instructions to the jury taken as a whole correctly stated the law with respect to the "force" required to convict Crist. Crist has failed to demonstrate

that the result of his trial would have been different had the judge included the word "physically" when defining "force" to the jury.

{¶36} Crist's first assignment of error is overruled.

II.

{¶37} In his second assignment of error, Crist maintains the jury instructions allowed the impermissible stacking of inferences by allowing inferences from "other facts or circumstances proven." Crist contends that the instructions undermined his right not to testify in his case. Specifically, Crist argues the jury was arguably allowed to base its verdict of guilty on the perceived basis that his failure to testify failed to rebut the victim's insistence in the recorded telephone calls that he had abused her. Crist agrees that he failed to object to the instructions at the trial court level.

{¶38} In the case at bar, the trial court instructed the jury,

> To infer or to make an inference is to reach a reasonable conclusion of fact which you may, but are not required to make, from other facts which you find have been established by direct evidence. Whether an inference is made, jurors, rests entirely with you. You may infer a fact or facts only from other facts or circumstances that have been proven by the greater weight of the evidence, but you may not make inferences from a speculative or remote basis that has not been established by the greater weight of the evidence.

6T. at 1246-1247.

{¶39} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any

reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks,* 61 Ohio St.3d at 272, 574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), *citing Hurt v. Charles J. Rogers Transp. Co.* , 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, *citing Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶40} In the case at bar, the trial court instructed the jury,

Ladies and gentlemen, it is not necessary that the Defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that he did not testify must not be considered by you for any purpose.

6T. at 1262.

{¶41} "Juries are presumed to follow their instructions." *Zafiro v. United States* 506 U.S. 534, 540, 113 S.Ct. 933, 122 L.Ed.2d 317(1993). "A presumption always exists that the jury has followed the instructions given to it by the trial court," *Pang v. Minch*, 53

Ohio St.3d 186, 187, 559 N.E.2d 1313(1990), at paragraph four of the syllabus, *rehearing denied*, 54 Ohio St.3d 716, 562 N.E.2d 163.

**{¶42}** Crist's reliance upon *State v. Leach*, 102 Ohio St.3d 135, 807 N.E.2d 335, 2004–Ohio–2147 is misplaced.

**{¶43}** In *Leach,* the Ohio Supreme Court held that the "use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." Id. at ¶ 38, 807 N.E.2d 335. In *Leach*, two women called the police and accused the defendant of attempted rape and other crimes. Id. at ¶ 3, 807 N.E.2d 335. During the state's case-in-chief, the police investigator testified that one of the victims had provided him with the defendant's phone number. Id. at ¶ 5, 807 N.E.2d 335. The investigator called the defendant and made an appointment to talk with him the next day. Id. at ¶ 5, 807 N.E.2d 335. The investigator testified that the defendant did not keep the appointment, and that the defendant had left a message on the police answering machine that he wanted to speak with an attorney before talking with the police. Id.

**{¶44}** In finding that the state violated the defendant's Fifth Amendment rights, *Leach* explained: "The state in this case presented testimony that Leach, who had not yet been arrested or *Mirandized*, remained silent and/or asserted his right to counsel in the face of questioning by law enforcement. This testimony was clearly meant to allow the jury to infer Leach's guilt. Otherwise, jurors might reason, Leach would have offered his version of events to law enforcement." Id. at ¶ 25. *See, State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶156. In *Powell,* the Supreme Court observed,

> *Leach* applies to the prosecutor's argument that Powell refused to
>
> turn himself in and assist the police. This argument implied that Powell had

something to hide by not turning himself in and telling the police what happened. Under *Leach*, this was an improper comment on Powell's prearrest silence and violated his Fifth Amendment privilege against self-incrimination.

*Powell* at ¶ 159. However, in *Powell* the state argued to the jury,

The Defendant refuses to come in even after his brother talks to him at the insistence of Detective Gast. He refuses to come in. Imagine what has just occurred. And he refuses to come in to assist.

*Powell* at ¶ 155.

{¶45} No testimony was presented or argument made by the state in the case at bar that Crist had something to hide by not testifying on his own behalf at trial. The trial court's instructions concerning inferences would not "naturally and necessarily" be taken as a comment on the failure of the accused to testify, or to present a defense. *See generally, State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906, 911(1986), citing *State v. Cooper*, 52 Ohio St.2d 163, 370 N.E.2d 725(1977), *vacated on other grounds* (1978), 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1157. The state may comment upon a defendant's failure to offer evidence in support of its case. *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118(2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the

case.  Id.  The state does not have a duty to disprove every possible circumstance suggested by the defendant.  Id.

{¶46}  Crist has not cited any evidence in the record that the jury failed to follow the trial court's instruction.  Accordingly, we find that Crist has failed to rebut the presumption that the jury followed the trial court's instructions not to consider the fact that he did not testify at trial.

{¶47}  Because we find there is no reasonable possibility that jury instructions cited by Crist as error contributed to his conviction, any error is harmless.  *State v. Kovac*, 150 Ohio App.3d 676, 782 N.E.2d 1185, 2002-Ohio-6784, ¶ 42; *State v. Lindsay*, 5th Dist. Richland No. 2010-CA-0134, 2011-Ohio-4747, ¶75.

{¶48}  Crist's second assignment of error is overruled.

{¶49}  The judgment of the Fairfield County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. JOHN W. WISE

_____

HON. CRAIG R. BALDWIN

WSG:clw 1031